Morning Your Honor, and may it please the Court. My name is Ron Bonetino. I am the counsel for Petitioner Janet Vasquez-De Munoz and her children, Alex and Angie Munoz-Vasquez. I would like to respectfully request four minutes for rebuttal. I watched the clock. Your Honor, substantial evidence does not support the BIA's denials of Janet's applications for withholding a removal or Alex and Angie's applications for asylum. They experienced incidents of rife-level persecution because of their membership in the Vasquez and Munoz family. Specifically, there are a number of incidents that were laid out, but specifically what I'd like to bring the Court's attention is that at one instance, Alex was harassed by the gang members and suffered a gash. There was an incident in which Alex and his father refused to give money to gang members as they entered the shop. Shortly afterwards, the gang encountered the family at a party and attempted to kidnap Alex because the family owed them one. Later on, the gang came to the house and demanded $700. And then shortly after that, the gang members murdered Armando Munoz, who was the husband and the father-in-law. Counsel, you've identified the group as the family itself, the Vasquez-Munoz family. What evidence is there that other members of the family are persecuted? In other words, one way of looking at this, and this is the way I think the government looked at it, was these were all economic crimes. And there were a series of economic crimes that affected the members of this family. But there's nothing here that suggests that the members of this family, if they were to walk the streets, would be singled out because they are members of that family. So are there other members of this family that remain in the country that are still that are being persecuted? Your Honor, I think that if you have a situation where in terms of generalized violence, if one or two instances of violence happen to a particular person, then that person happens to be unlucky. I think in this particular case, there is evidence that this family was singled out. And there was also, Ms. Vasquez testified that members of her in-laws were inside the United States, and they had also fled the country after the murder of the father-in-law. Right. But El Salvador has a very, very troubled past, and this is a tough country to live in. Everybody's going to acknowledge that. But for example, when Alex is shaken down for money by the gang members at a very young age, is there any evidence to suggest that he was shaken down because he was a Munoz? Or is he just shaken down because he had money in his pockets? I think that that first instance might happen to him because that's what the gang was after. But then after that, they continued to harass and go after the family. And so maybe that first instance was motivated by economic means. But after that, the gang then targeted the family. Well, they all seem to be economic. After the family, as a family, and not because they perceived that they had money that they could be extorted from them. Well, again, it's our position that once an event has happened to one member of the family, and that member of the family then refuses to accede to the request that the gang then turn their attention and target that particular family because of their refusal to accede to their demands. Mr. Kino, let me ask you this. If the record established that the persecution of the mother was because of economics, but not because of her family, would you still have a different claim for the children? Because it seems an argument could be made that the persecution against them was because of their membership in the family, even though the mother's claim was economic. Can you help me with that? Or do you contend that the children's claims depend upon the validity of the mother's claim? I think that the claims are all interrelated, Your Honor. I think that the gangs were targeting this particular family, and that in doing so, that's partially why they targeted the father-in-law. The father-in-law was, there's evidence in the record that stated that when the father-in-law was murdered because the family went looking for the family, and when they found that they harmed that family. What's interesting in this case, Your Honor, is that the IJ and the BIA downplayed the murder of the father-in-law. The immigration judge mentioned that her husband and her husband's father had problems with the gang members, and the BIA did not reference the event at all. The government contends that what we're asking for is the court to reweigh the evidence, but rather we're asking for the BIA to consider the record in its entirety. The BIA can't just cherry-pick its evidence. What I'm trying to ask you is, if you conclude that the crime against the mother, there's not a nexus to the family, it's an economic crime, and so she would not be able to recover. Are the children's claims fall within the same analysis of the two children's claims? So we don't find for the mother, and so we find there's no nexus to a membership in a family, it's an economic crime. Do we have something different for the children? Because they file separate petitions. I think that the children have a separate argument that they would be targeted in the future in the event that they return to El Salvador because of their age, and because the gangs tend to target younger members, that then they could recruit into their ranks. And what's the social group that you're saying now is resulting in the persecution? You said because their age and being children, that it seems like it's not a social group that was claimed. What would be the social group for which we should find a nexus? In that instance, your honor, it would be young Salvadorans who refuse to participate in gang activity. The trouble I'm having, I don't want to, I don't think it's fair sometimes to ask a question one thinks is conclusive, but if we conclude that the family of the Muñoz-Vazquez were not persecuted because being members of a family, but they were being persecuted for economic reasons, and that's why I think what Judge Bivey asked you. You still have two other claims, and it seems like your answer is that for those two children, the social group for which they're being persecuted is young Salvadorans that resist gang persecution. Is that the social group that we would be using for them? Yes, your honor. And it looks like that was never raised below. I don't remember that being a social group for them. That's correct. That's correct, your family membership. So your honor, the BIA and the IJ seem to give very short thrift to the notion of the effect of the murder of the father-in-law. And in relation to that, the government relied on ponto petitions, close family members may be relevant in assessing whether there's been past persecution. And in that particular case, Tamang had already left the country of persecution and he was already in the United States for three years. Whereas in this case, the event that occurred happened a mere two months after they had entered the United States. We contend, your honor, that there is sufficient evidence to show that these events have happened because of the membership in the family, the gang at the time that they were seeking to kidnap Alex stated that they owed them one. And it is possible for the gang to be motivated by retribution and also harming the family. I'm going to reserve the rest of my time for above, your honor. Thank you, counsel. And Mr. Klutkowski, you may proceed. Well, good morning, your honors, and may it please the court. My name is Kenneth Allen Klutkowski and I represent the attorney general of the United States. A person listening to my friend's argument this morning might be excused for reaching two incorrect conclusions regarding the standard of review that this court will apply first on the law that this question involves questions of first impression that this court reviews de novo. And second, that on the facts, the petitioners today must prove their assertions by a preponderance of the evidence. Even if that were true, the United States would still prevail here. But instead, this court's review involves settled Ninth Circuit precedent. And the agency's factual findings here need only be supported by substantial evidence. And so the petition for review should accordingly be denied. If I may, I'll start with asylum and withholding. In order for a person to claim refugee status and claim asylum in the United States, they must be persecuted for one of five protecting categories. Now, my friend during oral argument raised what seemed to be a sixth category, that being age, that if you're a young person, you could be targeted for certain action. That, of course, doesn't show up in Section 1101A42A at all. But the relevant one here is regarding being part of a membership in a particular social group. The group that my friend proposes is not cognizable under federal law. Sometimes they say it is membership in a family. Other times they say it is those who are only members of both the Vasquez and the Munoz family. But whether they're going one way or the other, the argument doesn't hold either way. First of all, there are members of both families as separate units that are not being targeted for violence. And if you're just talking about those who are members of both families, the fact that terrible things have happened to one family cuts against the idea that the group in question could be defined as a combination of the two families. Also, to the extent idea of recognizing a family unit at all as a cognizable group, if that is ever to be explored, it would be, in fact, very different from this case. There are certainly household names of families that are movers and shakers that affect the affairs of nations and can almost be thought of as part of the government or having significant influence in communities or in the affairs of state. None of that is an issue here. This family is not characterized in terms where it would be thought of as a family that would be targeted as such. And the agency's finding here that there's no nexus between the unfortunate events that have occurred and a particular social group, that no nexus finding is supported by substantial evidence. As the courts already noted this morning, El Salvador has crime problems, and those are problems with the conditions of living that, in fact, unfortunately, a very large portion of their population. But the petitioners here were being mistreated by criminals who were targeting shopkeepers or, as was just said earlier this morning, just people with money in their pocket, not because they're part of some sort of cognizable social group. Beyond that, the petitioners have failed to demonstrate that the El Salvador government is unwilling to control these gangs. This matter has been, it was in some instances reported to the police, but in one instance it was reported to the police in another city. In another instance, an event occurred shortly before the mother here left the country. In yet other instances, when reports were made, the police said that they were going to investigate. And El Salvador, as was shown in the record and in the briefs, El Salvador is working to try and make progress in combating this crime, and that they offered to investigate here. Other instances, such as the kidnapping we noted, the findings of the agency was that the kidnapping was, in fact, never reported. Beyond that, as has already been mentioned, it can't be overemphasized in terms of looking at this as a group, that other members of the family have been left unharmed. And so, the harm that has been suffered, while it's unfortunate, it does not rise to the extreme level of persecution. As Wackery holds, persecution is extreme mere treatment, not merely non-severe injuries or harassment or unfulfilled threats. And that beyond that, that treatment, even in severe instances, that maltreatment of family members is, generally speaking, not a substitute for the harm that an individual would have to claim in terms of asserting an individual protection against persecution. If I may transition quickly to the Convention Against Torture, it's torture as defined in federal law and as recognized by this court's precedents, Wackery and others. It is extraordinary treatment. It is extreme maltreatment. It is cruel and inhuman treatment. Nothing in the record, first of all, that not only have the injuries that have been suffered not rise to that level, but also the extreme maltreatment must be brought either by government officials or with the consent of the government, or at minimum, the acquiescence of the government. The agency below found that nothing in the record showed either that the petitioners would be tortured or that the torture would take place with the consent or acquiescence of officials of the El Salvadoran government. This court's precedents, Delgado, Ortiz, and others make clear that general criminal violence, while reprehensible, does not meet the legal definition for torture. In that, for each aspect under the CAT, that the petitioners had to prove them by a preponderance of the evidence. They did not do so, the agency found, and now the agency's factual conclusion in that regard, of course, need only be supported by substantial evidence here. As your honors have noted, conditions in El Salvador are rough. There's no question about that. But the government is working on these matters, the evidence that was submitted in the briefs and submitted below, and government ineffectiveness is not a substitute for acquiescence or for consent regarding the Convention Against Torture. So for all those reasons, we would say that all the petitioners' claims, whether for asylum or for withholding of removal or for protection under the Convention Against Torture, that on all those counts, the petition for review must be denied. Thank you, counsel. And Mr. Aquino, your turn for rebuttal. Thank you, your honor. Just two brief points. Council has made the point that certain incidents were not reported to the police. There were earlier incidents that did report to the police, and the evidence showed that she testified that the police response was they would open an investigation. So there is court precedent in this circuit that states that police reports are not required, where it's shown that those are going to be ineffectual and ineffective. And so being told that you're going to open an investigation doesn't really count or doesn't really show that the police are actually taking an active investigation into trying to quell gang violence. Secondly, your honor, the family social group issue was not a basis that the BIA held to deny this case. They didn't concede, as the government points out in the brief, but what they did say is that assuming argument that it was a particular social group, they mostly focused their energies on the nexus. The court should remand for that basis because the government's, I'm sorry, the BIA's finding in LEA 2, in which they find that a family is not a particular social group, runs afoul of this court's precedence in real spielage. Right, counsel, but if the BIA assumed the social group, then what it said was, there's no nexus. That is, we can't find any connection here that suggests that these folks were persecuted because of their social group. So they accepted the social group that you gave them, but they just said there's no evidence that this violence was related to their membership in the social group, as opposed to being general members of Salvadoran society who appear to have money. They were shopkeepers. They had a home industry. They had kids who were carrying their lunch money. Why would they target the father-in-law? I think that that is where... But that's the question. How do we know that they targeted the father-in-law because he was a member of the family, as opposed to because they perceived that he had money? Those are two different things. And once you've identified the particular social group as the family, it's like thinking, you know, Hatfields and McCoys, in which the Hatfields are, you know, the government and the McCoys are not, and that you're going to get persecuted simply because you're a Hatfield or a McCoy. Were these people persecuted because they were a Vasquez or a Munoz? And I'm not sure I see where the evidence is or what the evidence is that the father-in-law was murdered because he bore that last name. Your Honor, there is evidence in the record that says that one of Yanet's children was, who happens to be a U.S. citizen, was present at the time of the murder. And he testified, or he stated in another question, that he heard the gang members saying that they targeted and they came to looking for Armando Munoz because of his family. Your Honor, thank you very much for the opportunity to present today. We asked the court to remand, to reverse the BIA and remand the case. Thank you. Thank you, counsel. Thank both counsel for their arguments in this case. And the case is now submitted.
judges: Bybee, Whaley, Nelson